May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner, Alex Dinu. At the outset, I need to acknowledge that the parties have a basic disagreement about the scope of this Court's review. In our view, the Court must judge the propriety of the Board's decision solely on the grounds invoked by the Board, or in this case, because the Board summarily affirmed, the grounds invoked by the immigration judge. The Government, however, seems to think that this Court can affirm the Board's decision on grounds that neither the Board nor the immigration judge adopted. For example, the Government argues that the Court should affirm the immigration judge's conclusion that Mr. Dinu failed to establish past persecution because, the Government says, the multiple arrests, beatings, and death threats he suffered at the hands of the Romanian police do not rise to the level of persecution. The problem with that is that the IJ never said it. In my reading of the immigration judge's decision, the immigration judge found that Mr. Dinu had failed to establish past persecution because he, quote, failed to show that the authorities' interest in him was on account of political opinion or any other protected ground. That, it seems to me, is the sole issue before the Court. At another point, the Government argues that even if Mr. Dinu suffered past persecution, the former INS has rebutted the regulatory presumptions of future persecution, which arise upon a showing of past harm. The problem with this, obviously, is that the immigration found that Mr. Dinu had failed to establish past persecution, and as a result, she never had the opportunity to apply the presumptions of future persecution. And obviously, under the Supreme Court's recent decision in INS v. Ventura, this Court cannot, in the first instance, decide that question. As I said earlier, the immigration judge rejected Mr. Dinu's past persecution claim for just one reason. She said that he failed to establish that the authorities' interest in him was on account of political opinion or any other protected ground. In reaching that conclusion, in my view, the immigration judge committed a clear error of law. It's not just a question of substantial evidence or determining whether the evidence compels an opposite conclusion, but in my view, the immigration judge committed a clear legal error. Because for nearly 20 years, this Court has said that if there's no evidence of a legitimate prosecutorial purpose, there arises a presumption that the motive is political, where the government is harassing an immigration. In this case, it looks like what the police were doing, based on the client's own testimony, is they were investigating shootings by military in the Kaaba riots, or the Kaaba demonstrations. And they may have been ham-handed about it, I'm sure they were, and they may not ever have gotten enough evidence to make an arrest or bring charges. But what evidence is there that they did anything other than try to find the people who shot at the demonstrators? I'm perfectly willing to believe it's wrongly against your client, but... In terms of the presumption, Your Honor, and I want to talk about the cases that established the presumption, but in terms of the presumption, what's critical is there was never any criminal charge brought against him. It's true. The police did have some legitimate law enforcement reasons for questioning him. How long a period are we talking about? He was discharged in 1990. The riots, as I recall, were in 1989. He was discharged in 1990. He left the country several times, and eventually left the country permanently in 1994. So we're talking essentially a four-year period. We have investigations in this case. The real question, Your Honor, is what distinguishes this case from Rottnum and Singh and the other cases in which the court has invoked this presumption? And you're suggesting, well, because they had a legitimate law enforcement interest, then that takes this case out of the scope of the presumption. And I say that's absolutely untrue. Let's take a look at Rottnum. Rottnum v. INS establishes this presumption. In Rottnum, you had an individual from Sri Lanka who was caught red-handed transporting weapons for the LTTE. Clearly, the Sri Lankan government had a legitimate interest in that person, but because they never charged him with any legal offense, and they instead charged him. I think you stated your own distinction. I mean, in that case, from your description, from what we know about the case, they had evidence to bring him to justice, but they didn't. To me, it sounds like what's going on here, they were shaking him down. They were asking questions. They were trying to get him to confess. They were trying to get other evidence. And they didn't. I mean, there's no evidence they had a clear case against him. And yet, we have police in this country continue to have interest in suspects for much longer than four years. I don't doubt that at all. Well, I disagree with you, Your Honor, that that would distinguish this case from Rottnum. Another case in point is Sing. And there, perhaps, the evidence is more akin to what took place here. In Sing, you had an individual who was accused by the police of working with Sikh separatist guerrillas. He was never charged. Instead, he was taken and beaten. The police had some reason to believe, apparently, that he'd been sheltering these Sikh separatists. But he was never charged. Yes, Your Honor. 63 F. 3rd, 1501. Yeah, we said there's no evidence of legitimate prosecutorial purpose. Precisely. But because he wasn't charged. The focus in that case, Your Honor, and I think the focus in these cases is, was any legitimate prosecution brought? But he would have defied those statements that they asked him when they were trying to get him to talk about it, when they were trying to get him to talk about it. And what they were up to and what they were seeking evidence of, and again, sure, using methods we would not rule off, was that he was one of the shooters, one of the people that shot at the demonstrators. And I'm not sure how that strikes me as the kind of thing that a country can. Sure. But I don't see how that could possibly distinguish this case from Singh, for example, where they accused him, as they were beating him, of sheltering militants. Or it doesn't distinguish this case from Ratnam, where, as they were torturing him, they accused him of transporting weapons for the LTTE. In all these cases, there are multiple reasons for the arrest. The fact that they have a legitimate interest, law enforcement interest in this individual, that doesn't preclude a finding that he was also, in part, persecuted because of political opinion. And it definitely does not take this case out of the scope of Singh and Ratnam in the application of that presumption. And the thing about this case that makes me think that application of the presumption is most appropriate is, I think the evidence is actually somewhat compelling that the authorities were, in fact, motivated, at least in part, by his perceived support for the Chowchehki regime. I mean, we're dealing with an individual who's being accused by the new government of atrocities in defense of the former government. We know, because he's been deemed credible, that those allegations had no factual basis. He's testified that he was not involved in any such shootings. The immigration judge found that to be credible, truthful. Moreover, it seems to me... People testify credibly. Often people go to trial. In this country, they're found not guilty. The fact that he's credible, in fact, if he goes to trial in Romania and these charges would be acquitted, doesn't make... You're misstating the law, then, because in our circuit, if you're deemed credible, this Court says it will accept that the contents of that testimony is true. And if we accept the contents of his testimony is true... It's not that we're going to accept that he didn't do it, but what can he tell us about... What we're talking about is evidence that they were harassing him on account of imputed political opinion. Well, first we have the presumption, but moreover... Prosecuting him on account of imputed political opinion. What is the evidence of that? A couple points. First, we have the presumption, and I think because they didn't apply the presumption, that's the end of the analysis. The case should go back to the board so they can apply the presumption and make this analysis in the first instance. But if he declined to do that, I do think there's compelling evidence. As I was saying, first off, it's new regime versus old regime. He was defending the old regime. He's accused of atrocities. We know that that accusation is untrue. That's not evidence. That's sort of your inference that you'd like us to go... What I'm asking is, what evidence does he have? Does he quote a statement by an official? Does he say he was told this? There is no direct evidence. That would be direct evidence, but there is compelling circumstantial evidence. The fact that the Department of State report, the country profile, says that in Romania, military books follow the individual to whom it's assigned throughout their lives. This man's military records presumably were available and they would have established, but he was never even stationed in Craiova where these alleged atrocities took place. The authorities never offered any evidence against him. They never charged him with a crime. And instead, they threatened him with death if he ever revealed his detention. That does not sound like a legitimate effort to ferret out guilty parties or to find the truth. That seems like an attempt to harass him. Let's assume the police are bad police. And I think that's a fair assumption from the record. I mean, the I.G. found him credible. He's testified to it. But because police are bad police and they harass somebody because they're bad police, we have held as not necessarily persecution. Well, actually, Your Honor, what we have held in this circuit is if the government harasses an individual without bringing any legitimate criminal prosecution, we presume that the government is politically motivated. And that's what the court should do in this case. Well, we have a case coming out of Fiji, forgotten the name of it momentarily, where they put him in jail and they beat him on several occasions. But we held that police just were harassing him, moving him around. But we did not grant because there was no evidence the government was persecuting him. Well, that's a different case, Your Honor. That's Persaud v. INS. And the issue in that case was not the unaccount of. The issue there was, was the beating that he suffered severe enough to rise to the level of persecution? And that's a much different case because in Persaud, you have an individual who was taken out of his car by men in civilian dress, not police, but by men in civilian dress, detained for four to six hours, punched once in the stomach, kicked once from behind. In this particular case, you have a man who was detained repeatedly. He was detained once a month or once every other month, Your Honor, from February until at least he fled the country, I believe, December. That's ten months, ten detentions. I'm sorry, Your Honor. What do you make of the 1998 country report that seems to say whatever problem there was is now being ameliorated, that there's been a change of regime, that they are not pursuing charges to sympathize us anymore? I make of that, Your Honor, that it's inappropriate for you to even consider that question because, as I said earlier, the immigration judge found that there was no past persecution. The agency, the board, and the immigration judge have never had the opportunity to apply the regulatory presumptions of future persecution. And under Ventura, it's appropriate for this court to do that in the first instance. I'm sorry. You're saying that the board can simply say, well, even if there was persecution, let's say they get that one, say the conditions have changed? No, the board can do that, Your Honor, but in this case, they have not done that because the board made no finding that he had been persecuted in the past. So that's an issue that has not yet been ruled upon by the agency. Let me ask you, just so I understand the record, the I.G. found that the evidence in the record does not objectively support Deneu's subjective fear that the authorities in Romania would continue to have an interest in a low-ranking, non-commissioned military officer who served for one year in the military, and that he would not be prosecuted. That's not what I'm saying, Your Honor. I'm saying that the I.G. found that Deneu's subjective fear does not objectively support Deneu's subjective fear that the authorities in Romania would continue to have an interest in a low-ranking, non-commissioned military officer who served for one year in the military, and that he would not be prosecuted. I don't contest that particular finding, Your Honor. We have not argued that point. That's because that finding does not take into account any past persecution. So the way that you attack that is that the I.G. made a mistake not finding past persecution, and if had found past persecution, you have at least a presumption that Deneu's subjective fear does not objectively support Deneu's subjective fear. And then we would have to go back to the I.G. and say, does this overcome the presumption? Precisely. And then the burden would shift to the government. Okay. We'll hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court? Patricia Smith representing the government. Directly evidence in this case does not compel a reversal of the I.G.'s determinations that Petitioner is not eligible for asylum or withholding of deportation because he failed to establish that the actions by the Romanian authorities on the grounds of the I.G. amounted to past persecution or that he has an objectively reasonable fear of future persecution if he is removed to Romania. Moreover, because Petitioner has not even challenged the I.G.'s determination, the current country conditions preclude finding that Petitioner has a well-founded fear of future persecution. How do we reach that issue? How do we reach that issue? Yes. In the I.G.'s decision, the I.G., one of the first things that he indicates is that the objective evidence in the record indicates that conditions in the country have changed. On page 6 of his decision, administrative record 196, the I.G. initially states, I find, however, that he has failed to demonstrate statutory eligibility for asylum. Where are you reading from? Which paragraph? The start of this second sentence in the second whole paragraph. Okay. It says, I find, however, that he has failed to demonstrate statutory eligibility for asylum. I'm sorry. The second sentence starts. This Court finds. Page 6 of his opinion, administrative record at 196. 196. 196. Oh, I see. It's one paragraph. I find, however, that he has failed to demonstrate statutory eligibility for asylum because he has failed to provide adequate objective evidence to show that his subjective fear is objectively reasonable in view of current country conditions. The I.G. did not specifically there use the words presumption of past persecution, but we would argue that there he specifically fainted. I looked at the record evidence. The record evidence says to me, current country conditions have changed. Thus, even if we were to assume past persecution, I mean, we don't think the record supports that, but even if we were to assume it, the I.G. found, current country conditions dictate that he does not have a reasonable fear of future persecution. And we would say to May 1988. That's a little different from saying that starting with a presumption. I mean, this sounds like he has established current country conditions, but that's different from saying, assuming you have a presumption of past persecution, the government has met its burden of abiding the presumption. It doesn't say that. I think what the I.G. says here, I mean, I think you could argue it goes either way. And I think we would argue here that because he specifically discusses current country conditions, and he's talking about the objective evidence, that he is looking at the evidence. So you're saying then he applied the presumption? Because it would only come up if he applied the presumption. Correct, exactly. But he didn't find past persecution, so how does he get there? How do we get there? Well, I think we don't, we have two ways of going at it, or we can look at it overall. If he reached country conditions, as you argue, then you're saying that he found past persecution, and he's entitled to a presumption of well-founded future persecution. Is that what he found? No, well, we're not saying that, Your Honor, because he clearly found that there was not past persecution. However, often the I.J.'s go down alternative routes. And I think here the I.J. did. He started out with the first one, I think, which may have keyed into him most significantly, was current country conditions are significantly different. And that made an analytical error. I mean, that's the other, I mean, if you're relying on country conditions, and it seems to me he's muddled up the analysis, we'd have to send it back. You're talking about past persecution, then I think it's a different issue. Isn't it the more plausible reading that he said, okay, I find no past persecution, and I'm also making a determination as to the future? I believe he did do that, Your Honor. And I think it's arguable that he also went beyond that. But we can definitely just deal with it in terms of saying he determined. I was saying, you know, the real question is, regardless of what happened in the past, you know, I found there was nothing happened in the past. But, of course, if he walks back in and he is going to be subject to future persecution, then he'd be on a roof of relief, even if he wasn't in the past. So it looks to me like all he's doing is covering the future. He's certainly not doing what you're suggesting, which is say hypothetically, assuming the word presumption, I find it rebutted here. I think that's too many words to read from that one sentence. He doesn't specifically say that, Your Honor. I mean, we do think that it can be argued that he... I'm not sure what lawyers mean when they say don't specifically. Does he generally say it? I think he arguably... Kayleigh, does he say it in any way at all?  He does not talk about presumptions, Your Honor. But he talks about the rebutting of presumptions? No, he doesn't, Your Honor. Okay. So what does he specifically mean? He talks about the objective evidence of the record. He doesn't say it. He doesn't specifically say it. And I understand the point you're raising. But when he what he's doing is looking at the objective evidence. And when he's looked at the objective evidence, which really would be the same as looking at the evidence if you apply the presumption. Well, you do understand the difference, I hope, between saying given the petitioner has the burden to prove future persecution, having failed to prove past persecution, I find he didn't carry that burden, and saying starting with a presumption of past persecution, I find the government met its burden of rebutting the presumption. You understand that those are two analytically distinct propositions. Yes, Your Honor. And that one could, depending on where one places a burden and where one starts a presumption, with the same amount of evidence, one could reach very different conclusions. Well, certainly, Your Honor. Okay. So when you say specifically this and specifically that, he didn't find, the fact of the matter is there's nothing in here that does that makes it in any way clear that he was even hypothetically applying a presumption or even hypothetically putting the burden on the government to rebut the presumption. Again, we think in the... Are there words there that say that, that could be construed as saying that? Again, and not to, to... Well, why don't you just say yes or no, and if the answer is yes, point it out. There are not specific words, but I know you take issue with the word specific. But I think it's arguable. But it's irrelevant in this case in any event, because the Court... Then show me what are the general words. I think when he's saying the objective evidence shows there was no subjective fear in view of current country conditions. So he's looking at the evidence. And it's arguable that in looking at the evidence, it could be that he's applying the presumption. I'm not, that I don't think he is specifically saying he, I know he's not specifically saying he is applying the presumption. But in any event, I mean, I think what's... So he can't take you up on your invitation of saying regardless of the presumption, changed country conditions must be credited because he found that. He doesn't specifically use those words, but I think the... Right. Okay. Let's get to the meat of your argument here. Certainly, Your Honor. Past persecution. Past persecution. Now, I can understand the idea that if someone's picked up for law enforcement purposes, that's not necessarily persecution or unaccounted. But I suppose if one's beaten on the third occasion, the fifth occasion, the seventh occasion, the twelfth occasion, released, the fourteenth, the seventeenth, and finally get to twenty, it might occur to one that maybe this was not a search for the truth or a search for justice. I mean, isn't there a reasonable inference here, particularly given our cases, that there was at least a mixed motive for the police action? I don't think so, Your Honor. The testimony of Petitioner was that he was picked up because the police were confused as to who may have been involved in shooting at the demonstrators. Well, what he says was what they were trying to do is to find guilty people or invent them so they can justify their own overthrow of the President. But there is... Due to the fact I was part of an anti-terror platoon during my military service, they tried to get me to say that I was shooting into the mass of people. What they were trying to do is to find guilty people, invent them so the communists can justify their overthrow of the former President. That sounds as though it's political, or at least arguably political in part. I don't think so, Your Honor. I mean, they were not picking him up because he was a member of the military. How do you know? He was a member of the military both before and after the Revolution in 1989. He started in September of 1989. He continued with the required service until September 1990. So the suggestion that they were picking him up because of different views that existed before and after the Revolution just isn't evident in the record. I mean, he was in the military both before and after. What he indicated was that the police were confused as to which of one of the military units was involved in shooting at the demonstrators, and they were trying to find out who was involved and to punish those people. They had a legitimate purpose. I mean, he himself testified to that. And I credit that, but our cases seem to say that after a certain point, if there is no legitimate investigation, that we have to have a presumption that the motive was at least in part political. That's what Singh says. And here, as I say, I credit first five or six times maybe they arrest him and beat him and try to get him to confess. But about the 20th time, I think I would conclude that maybe we're not going to have a trial, we're not going to have a charge, and they're just going to keep beating me. And, you know, if he says it's political, we have no evidence as to what they thought, of course. But he doesn't say it's – I mean, in his briefs now he says it's political or they arrest him because it's a suspected political opinion. When he's talking about it in his testimony, he says they're looking for the guilty party. They want to find out who shot at the demonstrators. He doesn't say they're arresting me because I was part of a military group, which they attributed a political opinion to. Being part of the military does not mean you have a specific political opinion. Right, right. But he says that in his asylum application. Due to the fact I was part of the anti-terror platoon in my military stage, they tried to get me to say I was shooting the masked people. They're trying to do is to find guilty people in front of them so they can justify the overthrow of the former President. But they weren't going after all people that were in the military and defining a political opinion to them. It was because it was one of these units that supposedly had shot at the demonstrators, so they were trying to find who among these various units was responsible. It's not clear how many times he was, in fact, arrested. I mean, it talks about he was arrested monthly, but he did start to leave the country. So it's the record is unclear as to how many times he was actually arrested. That was at least 10? We don't really know that, Your Honor. I mean, it just says it happened once a month, but then he starts leaving the country. And it's not clear once he starts leaving the country, he comes back in. What's the minimum times you think he was beaten by the police? I don't think the record tells us that, Your Honor. And I don't think the I.J. didn't specifically deal with the situation. I think the I.J. specifically indicated what happened here was heavy-handed law enforcement. And in doing that, you know, he was looking at what the Petitioner testified to. And the Petitioner's testimony was they were looking for the guilty party. And he did not indicate that he had a certain political opinion. He did not indicate that the Romanian authorities attributed a certain political opinion to him. So there's no evidence of a political opinion here. So it's not a mixed motive type of a case. With mixed motive type of cases where there's been potentially some kind of prosecutorial experience or accusations, there's also something else. But here we're missing the something else. It just doesn't exist. He doesn't attribute a political opinion to himself. He doesn't indicate that the Romanian authorities attributed a political opinion to him. And when we go beyond the past persecution issue to the well-founded motive. They don't attribute a political opinion to him. But nevertheless, they have a political motive. They're looking for a scapegoat for political purposes. Is that enough? It's not, Your Honor. Under the law of the circuit, what matters is the victim's political opinion. And he has to have one or there has to be one attributed to him. And that's just as basic. Why isn't that an imputed political opinion? If you're trying to by definition of a scapegoat, you're trying to say, okay, we've got members of the former regime who we can show were guilty of terrible things. Again, the whole issue of the former regime really doesn't exist. Because, again, he was in the military both before and after the revolution. Well, no, but this is the, you know, at least that's what they believed, that he was associated with the former regime. That's what it says in his brief. It doesn't say that in his testimony. You know, the testimony is there was some confusion as to who was involved. It wasn't they were attacking me because I was part of the prior regime. Because he was in the military before and after the new regime. Well, you know, I mean, people who do persecutions generally don't say, all right, I'm going to persecute you within the meaning of the INA and here is the card. And now you sign that and we're all agreed that I'm going to persecute you and I'm going to beat you. That's correct, Your Honor. It doesn't happen. We never get that kind of vote. No, Your Honor. It's never fabricated. I mean, sometimes you do have the authorities saying certain things about political opinion. I mean, that does happen on occasion. Certainly it's not going to happen every time. I mean, you can sometimes use circumstantial evidence. But I don't think in this case there is that kind of evidence, because he doesn't have a political opinion. I mean, his being in the military, that was a required service. He wasn't pro the prior government. I mean, that – and he doesn't say he was. He doesn't say the other – in his testimony, he doesn't indicate that the Romanian authorities attributed that to him. So there's no – Basically. I mean, in fairness, he says they were looking for a scapegoat for this. They were trying to find out who was the guilty party. I mean, he may use the word scapegoat, but it's – What I'm saying is they were looking for a scapegoat, and it doesn't indicate that a scapegoat had to have a particular political opinion. That's correct. They were looking for somebody who was sufficiently in the scene or could be framed to take the blame, and they probably wouldn't care whether he was in support of King Michael, right? He would have – Right. Correct, Your Honor. He would be under that theory. Right. They would just seek to find someone to blame at all. So that they could say in front of the public, here's someone to whom we know the public will impute a political opinion, and he did something terrible. I'm sorry, Your Honor. I mean, what basically, if you're looking for a scapegoat, and again, I know you disagree that's what was happening. They're looking for a scapegoat. They're trying to say here's someone about whom the public will impute a political opinion. I don't think that you have to assume that they have to impute a political opinion. I mean, there's nothing about what happened here to say that. I mean, they want to find out who shot into the demonstrators. And they know it was someone from one of the military units. But they are not saying all the military units are bad, and therefore, we're going to attribute a political opinion to them. I mean, some of the same people served before and after the revolution. I know you're arguing the facts, but he says they did it because they were looking for a scapegoat. Right. And I think – I don't agree with your definition of the word scapegoat. I mean, you're saying if you're a scapegoat, that means a political opinion is going to be imputed to you by the public. No, no.  I missed that in the record. Is that in the record? I believe in his testimony he very well may use the word scapegoat, but I'm not sure of the exact record cite to that. He claimed he was a scapegoat? I'm sorry? He claimed he was a scapegoat? I think he claimed the police were looking for a scapegoat. I guess the difference is whether or not if you get arrested for shooting into the crowd, whether that means the – and the public will say, oh, you know, you must have been there to support the – you did it to support the government. That's for saying it was stupid or it was overzealous or you were following orders or whatever. But what the – If, you know, police shoot somebody, is that sort of somehow an imputation? And they can prosecute them. Is that somehow an imputation of political opinion to them? I don't know. And I would say, you know, whatever the public may think, it really isn't relevant. It's what the motivation was of the Roman – of the Romanian authorities and were they attributing a political opinion to the Petitioner. And I don't think the record indicates that at all. Well, if they were sham – if it's a sham investigation for political purposes. Right. The Petitioner himself admits that it wasn't a sham investigation. He indicates they were looking for the guilty party. He says it in his application that basically it was a sham. He indicates in his testimony, which I think is just expounding upon what's in his application, they were looking for the guilty party. I mean, he says it's real. I mean, this happened. We're looking for someone and they were confused as to who was involved in it. I mean, he indicates he wasn't, but he doesn't say it didn't occur. He doesn't say it wasn't someone else in the other military unit. I mean, they were just – the police, in his own words, were confused as to who it was. The other issue, just very quickly, if I may, I mean, the I.J. found past – found past persecution. He also found there was no well-founded fear of persecution. And the Petitioner has not addressed that issue at all in his brief. And there we would say it's waived and that there is no basis to be returning this to the board as well. Well, if he wins – if he wins on past persecution, then we have to return it so that the presumption could be applied. Well, and again, that gets back to, I think, arguably the I.J.'s position. I mean, so the fact that he may have waived in this argument is of no consequence really. It – again, I mean, arguably we think when the I.J. is saying from the objective evidence, the country conditions indicate that there is no well-founded fear of persecution.  Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you.
judges: Wallace, Kozinski, Thomas